UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

DON TERRY,

                  Petitioner,

      - against -

JAMES T. CONWAY,

                 Respondent.

----------------------------------------------------------X

**MEMORANDUM AND ORDER**
11-CV-2647 (RRM)

ROSLYNN R. MAUSKOPF, United States District Judge.

Petitioner *pro se*, Don Terry, filed the instant petition seeking a writ of habeas corpus on May 27, 2011. For the reasons set forth below, his petition is DENIED.

## BACKGROUND

On March 7, 2006, an unidentified pregnant woman hailed a cab and two men (later identified as petitioner Don Terry and co-defendant Jeffrey Bonner)[1] entered the cab with her. (May 7, 2008 Trial Tr. (Belo-Osagi) (Doc. No. 8-2) at 216:5–217:23, 244:7–25, 249:12–22.) Once in the cab, they gave the cab driver, Wahab Belo-Osagi, directions for where to go. (*Id.* at 221:11–18.) Terry, Bonner, and the woman began asking Belo-Osagi questions about his family and started a "social" conversation with him. (*Id.* at 222:22–223:6.) Terry then asked whether Belo-Osagi had change for a $50 and a $100 bill. (*Id.* at 223:7–224:17) After Belo-Osagi told the passengers that he did not have change, they began directing him to stop at different locations. (*Id.* at 224:19–225:23.) Finally, Belo-Osagi stopped the cab at the well-lit street corner of 84th Drive and Manton Street in Briarwood, Queens, asked the passengers to get out of his cab, and told them that they did not have to pay him. (*Id.* at 226:18–227:16.)

---

[1] Cab driver Wahab Belo-Osagi identified Terry at trial. (May 7, 2008 Trial Tr. (Belo-Osagi) (Doc. No. 8-2) at 244:7–25, 249:12–22.)

In response, the man sitting directly behind Belo-Osagi (later identified as Terry) pulled out a gun and placed it on the right side of Belo-Osagi's neck, asking him to empty his pockets. (*Id.* at 227:17–228:8, 244:7–25.) The other man in the cab (later identified as Bonner) leaned over, tried unsuccessfully to put the car in park and remove the key, reached into Belo-Osagi's pockets, pulled out Belo-Osagi's cell phone and money, and handed it all to Terry. (*Id.* at 229:6–232:18, 249:12–22.) Then, all three passengers exited the cab and walked away. (*Id.* at 232:19–23.)

As the three passengers were walking away, Belo-Osagi saw an unmarked police car and told the officers that he had been robbed at gunpoint. (*Id.* at 234:22–235:19.) Belo-Osagi got into the police car and they began driving down the street when Belo-Osagi saw the pregnant woman. (*Id.* at 235:15–236:18.) The police officers caught up with the woman and arrested her. (Resp.'s Aff. in Opp'n (Doc. No. 6) at 6.) The police officers also caught up to Terry, who Belo-Osagi identified at the scene, and arrested him. (May 7, 2008 Trial Tr. (Belo-Osagi) at 238–39.) The officers found the stolen money and cell phone on Terry's person. (*Id.*) The officers later caught Bonner as well. (*Id.*)

After being arrested, both Terry and Bonner proceeded to a joint jury trial before the Hon. Michael Aloise in the Supreme Court of New York, Queens County. (*Id.*)

## PROCEDURAL POSTURE

### I.     Prosecution

Following his arrest, the government charged Terry with two counts of robbery in the second degree, criminal possession of stolen property in the fifth degree, and unlawful sale or possession of an air pistol or rifle. (Resp.'s Aff. in Opp'n at 7.) Eventually, the prosecution moved to

dismiss the count of the indictment for unlawful sale or possession of an air pistol or rifle. (Resp.'s Mem. in Opp'n (Doc. No. 6) at 26.)

## II.     Motion for Severance

On May 6, 2008, before the second day of jury selection, the prosecutor addressed the fact that Terry's prior counsel previously had filed a motion for severance on the basis of co-defendant Bonner's testimony to a Grand Jury that, although Bonner was present in the cab, Terry alone committed the robbery. (Resp.'s Mem. in Opp'n at 12; May 6, 2008 Trial Tr. (Doc. 8-1) at 89:24–90:6.) Originally, in response to the motion, the prosecutor had argued that there should not be a severance as the prosecution would not introduce Bonner's Grand Jury testimony at trial. (May 6, 2008 Trial Tr. at 90:7–13.) However, on May 6th, the prosecutor requested that she be allowed to use Bonner's Grand Jury testimony at trial to refute Bonner's attorney's new theory of the defense that Bonner was misidentified and was never in the cab. (*Id.* at 90:21–91:4.) The prosecutor indicated that, if Bonner wanted to use such a defense, the prosecution intended to use Bonner's statements to the Grand Jury to prove that Bonner was indeed in the cab. (*Id*.) The prosecutor stated that he would "redact the minutes completely to take out Mr. Terry's involvement." (*Id*. at 91:1–4.) The judge ruled that the defendants would be tried jointly and allowed the prosecutor to introduce redacted Grand Jury evidence placing Bonner in the cab if Bonner attempted to argue he was not in the cab during the robbery. (*Id*. at 174:25–175:9.)

After Bonner's counsel gave his opening statement, articulating a mere presence defense, Terry's counsel renewed his motion for severance, stating that the trial had "come to the point where we really do have antagonistic defenses." (*Id.* at 199:11–201:20, 202:16–203:14.) Because Terry was arguing an improper identification defense and Bonner was arguing a mere presence defense, Terry's counsel argued that severance was necessary. (*Id.* at 202:16–203:14.)

Terry's counsel further argued that, if Bonner were to testify, it would put Terry in an impossible situation. (*Id.* at 205:3–6.) Similarly, if Terry were to testify, Bonner would be in an impossible situation. (*Id.*) The motion to sever was denied. (*Id.* at 205:15–16.) Terry's counsel never renewed the motion to sever. (Resp.'s Mem. in Opp'n at 19.)

### III.     Conviction and Sentence

The jury convicted Terry of two counts of robbery in the second degree and one count of criminal possession of stolen property in the fifth degree. (Habeas Pet. (Doc No. 1) at 1–2.) On July 1, 2008, Terry was sentenced as a persistent violent felon pursuant to N.Y. Crim. Proc. Law § 70.08 to concurrent terms of imprisonment of 25 years to life for each count of robbery in the second degree and a determinate term of one year for criminal possession of stolen property in the fifth degree. (App. Div. Decision & Order (Doc. No. 1) at 22 (ECF pagination).)

### IV.     Post-Judgment Motion

Following his conviction, Terry filed a motion pursuant to N.Y. C.P.L.R § 440.10 in the New York Supreme Court, Queens County. (Resp.'s Aff. in Opp'n at 8.) In that motion, Terry challenged his conviction on the ground that his right to a speedy trial was violated. (*Id.*) By memorandum dated October 22, 2008, the New York Supreme Court, Queens County denied Terry's motion because it was based in totality on facts within the record which were pending on appeal. (Oct. 22, 2008 Mem. Supreme Ct., Queens County (Doc. No. 7) at 17 (ECF pagination).)

### V.     Direct Appeal

Terry appealed his conviction to the Appellate Division, Second Department in April of 2010. (Resp.'s Aff. in Opp'n at 8–10.) Terry raised five grounds as error: (1) the trial court's refusal to sever his case from that of his co-defendant; (2) the combined prejudicial effect of (a)

evidence that the victim identified an accomplice who was not on trial, (b) summation comments relating to the identification, and (c) the absence of a charge instructing the jury not to speculate about the accomplice; (3) the trial court's (a) declining to charge the jury that the mere probability of guilt did not constitute proof beyond a reasonable doubt and (b) not adequately instructing the jury to return separate verdicts as to each defendant; (4) Terry's adjudication as a mandatory persistent felon; and (5) the sentence of 25 years to life was excessive. (Def.-Appellant's App. Div. Br. ("App. Div. Br.") (Doc. No. 7) at 18–79 (ECF pagination).)

On November 30, 2010, the Appellate Division modified petitioner's sentence to 20 years to life in the interests of justice, but otherwise unanimously affirmed the decision of the trial court. (App. Div. Decision & Order at 22–23 (ECF pagination).) It held that petitioner's first ground (severance) was without merit. (*Id.*) The Appellate Division stated that Terry and his co-defendant's defenses were not irreconcilable and, thus, there was no danger that a conflict would lead the jury to infer Terry's guilt. (*Id.* at 23.) It held that Terry's remaining claims relating to the identification of the accomplice who was not on trial, the instructions on reasonable doubt, the instructions regarding the separate verdicts, and the mandatory persistent felon finding were unpreserved for appellate review and did not merit reversal in any event. (*Id.*) Terry sought leave to appeal to the New York Court of Appeals, which was denied on February 23, 2011. (Certificate Den. Leave (Doc. No. 1) at 25 (ECF pagination).)

## VI.     Petition for Writ of Habeas Corpus

Terry filed the instant petition for a writ of habeas corpus, alleging the same four grounds previously denied by the Appellate Division. (*See* Habeas Pet. at 7–18.) Respondent filed its opposition to the petition along with supporting papers. (*See* Resp.'s Aff. in Opp'n; Resp.'s Mem. in Opp'n.)

Terry moved to stay his petition so that he could return to state court to exhaust five claims not previously presented to the state court.  (October 5, 2012 Letter Mot. (Doc. No. 22); Feb. 1, 2013 Letter Mot. (Doc. No. 24).)  Those new claims included that: (1) there was a jurisdictional defect in the felony complaint and indictment; (2) the state engaged in selective prosecution; (3) the state improperly sealed the statement of the alleged accomplice; (4) the state withheld *Brady* and *Rosario* material; and (5) the defendant received ineffective assistance of counsel.  (October 5, 2012 Letter Mot.; Feb. 1, 2013 Letter Mot.)  The stay was denied on August 16, 2013.  *Terry v. Conway*, No. 11-CV-2647 (RRM), 2013 WL 4458734 (E.D.N.Y. Aug. 16, 2013).

## STANDARD OF REVIEW

Consistent with the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, §§ 2253, 2254, 110 Stat. 1214 (1996), federal courts may grant a state prisoner's petition for habeas corpus on claims "adjudicated on the merits" in state court only where the adjudication of each claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding."  28 U.S.C. § 2254(d).  Conversely, claims that have not been adjudicated on the merits are subject to *de novo* review.  *Washington v. Schriver*, 255 F.3d 45, 55 (2d Cir. 2001).  A state court's factual findings are presumed to be correct and may be overturned only if a petitioner offers "clear and convincing evidence" that the findings were in error.  28 U.S.C. § 2254(e)(1).  Where a state court's decision rests on a procedural bar constituting an adequate state law ground independent of the federal question, federal courts will not review the question of federal law on a habeas

petition as it is considered procedurally barred unless the prisoner demonstrates cause for failing to comply with the state procedural rule and prejudice resulting from the procedural bar "or that a failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *accord Joseph v. Racette*, No. 12-CV-1693 (NGG), 2014 WL 1426255, at *4, *4 n.4 (E.D.N.Y. Apr. 14, 2014).

A state court adjudicates a petitioner's federal constitutional claims "on the merits" when "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to a judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). The "state court need not mention the argument raised or cite relevant case law in order for its ruling to constitute an adjudication on the merits." *Brown v. Artuz*, 283 F.3d 492, 498 (2d Cir. 2002) (internal quotation marks and citation omitted). "[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." *Sellan*, 261 F.3d at 311–12. Stated simply, under § 2254(d)(1), this Court is confined to the question of "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

**DISCUSSION**

Terry asserts four claims in his petition – severance, right to a fair trial with respect to prejudicial admission of accomplice evidence and lack of jury charge regarding reasonable doubt, and adjudication as a mandatory persistent felon. For the reasons set forth below, these claims are denied.

**I.     Severance**

Terry argues that the trial court's denial of his motion for severance violated his due process right to a fair trial. (Habeas Pet. at 7 (ECF pagination).) "As a general rule in federal court, the decision whether to grant a severance is 'committed to the sound discretion of the trial judge.'" *Grant v. Hoke*, 921 F.2d 28, 31 (2d Cir. 1990) (quoting *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989), *cert. denied,* 493 U.S. 1081 (1990)). "Joinder rules are a matter of state law and 'federal habeas corpus relief does not lie for errors of state law.'" *Funches v. Walsh*, No. 05-CV-2839 (NRB), 2006 WL 1063287, at *8 (S.D.N.Y. Apr. 21, 2006), *aff'd,* 264 F. App'x 45 (2d Cir. 2008) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)); *see Mercedes v. Herbert*, No. 01-CV-1359 (DC), 2002 WL 826809, at *5 (S.D.N.Y. Apr. 30, 2002) ("A trial court's denial of a severance motion is considered 'virtually unreviewable.'" (quoting *United States v. Friedman*, 864 F.2d 535, 563 (2d Cir. 1988))). Nevertheless, federal courts may grant habeas corpus relief where a trial court's denial of a severance motion rises to the level of a due process violation. *Id.* However, such relief may only be granted where the constitutional error "had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

The Second Circuit has "recognized that a joint trial is fundamentally unfair where codefendants present mutually antagonistic defenses." *Grant*, 921 F. 2d at 31. "Mere

antagonism between defenses is not enough." *United States v. Serpoosh*, 919 F.2d 835, 837 (2d Cir. 1990). The standard is not met where "codefendants seek to place the blame on each other." *Id.* To find a mutually antagonistic defense, a petitioner must show that the conflict is so irreconcilable that acceptance of one defendant's defense will necessarily lead the jury to convict the other. *Id.* at 837–38. Accordingly, in cases of antagonistic defenses, severance is required only where "the conflict is so irreconcilable that acceptance of one defendant's defense requires that the testimony offered on behalf of a codefendant be disbelieved," *United States v. Tutino*, 883 F.2d 1125, 1130 (2d Cir. 1989), or where "the jury will infer that both defendants are guilty solely due to the conflict," *Serpoosh*, 919 F.2d at 838 (quoting *United States v. Herring*, 602 F.2d 1220, 1225 (5th Cir. 1979), *cert. denied,* 444 U.S. 1046 (1980)).

Here, Terry has not shown that the trial court's denial of his motion to sever denied him the right to a fair trial. As an initial matter, joinder is appropriate where charges against co-defendants are based on the "same criminal transaction." N.Y. Cim. Proc. Law § 200.40(1)(c); *see also Aramas v. Donnelly*, No. 99-CV-11306 (JSR), 2002 WL 31307929, at *15 (S.D.N.Y. Oct. 15, 2002) ("There is a strong presumption of a joint trial where two (or more) defendants are charged with having committed the same crime.").

Even if the trial court had abused its discretion in denying severance, Terry has not demonstrated that the defenses presented in the trial court were mutually and irreconcilably antagonistic. At the trial, counsel for co-defendant Bonner proceeded on a defense theory that Bonner was merely present when the robbery occurred. He argued that Bonner was on his way home and had given Belo-Osagi his correct address, and the fact that the victim did not identify Bonner as the perpetrator with the gun supported this theory. (May 6, 2008 Trial Tr. at 199–200.) Counsel for Terry proceeded on the defense theory that Terry was improperly identified.

(*Id.*)  These two defense theories are not mutually and irreconcilably antagonistic because it is possible that a jury could believe both that Bonner was merely present at the scene of the crime and that Terry was not present.  *See United States v. Volpe*, 42 F. Supp. 2d 204, 212 (E.D.N.Y. 1999) ("Volpe's apparent defense to that count is that he did not participate in the car assault. That defense does not require a jury finding that Wiese did participate.").

While Bonner's counsel made arguments damaging to Terry, for example, that the exact amount stolen was recovered from Terry alone, such evidence would be admissible in a trial solely against Terry and a mere unfavorable comment does not warrant severance.  *See People v. Clark*, 66 A.D.3d 1489, 1489 (2009) ("Although at least one comment made by the codefendant's attorney on summation was unfavorable to defendant, that single display of hostility did not warrant severance.").  Along the same lines, Bonner's counsel's cross examination of Belo-Osagi similarly did not deny Terry the right to a fair trial.  Counsel asked "isn't it a fact that Mr. Terry . . . put the gun to your head . . . and . . . removed the money and the cell phone from your person?"  (May 7, 2008 Trial Tr. at 269:6–10.)  However, the prosecutor elicited the same information in her direct case:

> Q: Inside your cab that night, the individual you just pointed to, Defendant Terry, what did he do?
>
> A: Inside the car; he pointed the gun at me. He was the one that asked me if I had $50 or $100. That is what he did.

(*Id.* at 245:3–7.)  Belo-Osagi further stated that he had identified Terry (the "slimmer one") approximately 100 feet from the crime scene, that the police recovered his cell phone from Terry on the scene, and that the exact amount and denomination of bills taken from him were recovered from Terry.  (*Id.* at 238–45.)  While Bonner's counsel's arguments did attempt to place the blame on Terry, he did not elicit testimony or produce evidence that would not have

otherwise been admissible. "It is true, of course, that petitioner or [his co-defendant] might have had a better chance of acquittal in separate trials. That, however, is not the standard for mandating severance." *Funches*, 2006 WL 1063287, at *9. Accordingly, there is no basis, in law, for concluding that Bonner's defense prejudiced petitioner.

## II. Alleged Procedural, Evidentiary, and Charge Errors

Terry next argues that the combined prejudicial effect of (1) evidence that the victim identified an accomplice not on trial, (2) reference to that evidence in summation, and (3) absence of a jury charge not to speculate on the status of the accomplice (collectively, "accomplice evidence") denied him the right to a fair trial. (Habeas Pet. at 10 (ECF pagination).) In addition, Terry faults his trial counsel for failing to raise this claim. (*Id.*) These claims are procedurally barred as the Appellate Division found Terry's "claims relating to the identification at trial of an accomplice not on trial . . . unpreserved for appellate review." (App. Div. Decision & Order at 23 (ECF pagination) (citing N.Y. Crim. Proc. Law § 470.05(2)).) *See Joseph*, 2014 WL 1426255, at *5 ("If a § 2254 petitioner has failed to present a claim to a state court but *can no longer do so* . . . then that claim is considered procedurally barred rather than unexhausted."). Under New York State's rules, defense counsel must contemporaneously object to any alleged legal error at a criminal trial. *See* N.Y. Crim. Proc. Law § 470.05(2) ("For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.").

A federal habeas court will not consider a petitioner's claim if that claim was defaulted in state court on an adequate and independent state law ground unless the petitioner shows good

cause for and actual prejudice resulting from his noncompliance with the state's procedural rule. *Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."); *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012) (finding procedurally barred claims unreviewable unless petitioner shows either (1) cause and prejudice for his default, or (2) that he was actually innocent); *Richardson v. Greene*, No. 05-CV-4805 (SAS), 2006 WL 2707334 (S.D.N.Y. Sept. 20, 2006) ("*Richardson I*") (stating same and applying test), *aff'd* 497 F.3d 212 (2d Cir. 2007) ("*Richardson II*").

      i.   *Adequate and Independent State Law Ground*

The accomplice evidence claims are procedurally barred on an independent and adequate state-law ground. Here, the Appellate Division held that Terry's claims were not preserved for appellate review. (App. Div. Decision & Order at 23 (ECF pagination).) This determination constitutes an "independent" ground of decision. *See Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) ("There is no question that the Appellate Division's explicit invocation of the procedural bar constitutes an independent state ground." (internal citation and quotation marks omitted)).

The question then is whether New York's preservation rule is "adequate" to prevent federal collateral review in this case. This question is governed by federal law. *Richardson II*, 497 F.3d at 217. A state preservation rule is adequate where it is "'firmly established and regularly followed by the state,'" *id.* at 218 (quoting *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003)), and where its application would not be "'exorbitant,' that is to say, an arid 'ritual . . .

[that] would further no perceivable state interest,'" *id.* (quoting *Lee v. Kemna*, 534 U.S. 362, 366 (2002)). Where – as here – the case law interpreting New York's preservation rule "displays consistent application in a context similar to the one before us, that rule is firmly established, regularly followed, and hence adequate for purposes of the independent and adequate state ground doctrine." *Richardson II*, 497 F.3d at 220; *see also Garvey*, 485 F.3d at 718 (Holding that preservation required under § 470.05(2) is "a firmly established and regularly followed New York procedural rule."). Thus, New York's preservation rule constitutes an adequate and independent state law ground for purposes of Terry's federal habeas petition and Terry's accomplice evidence claims are procedurally barred.

      ii.   *Cause and Prejudice*

Even when a habeas claim is procedurally defaulted, a federal court may consider the claim if the petitioner can demonstrate (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claim alleged will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. The only cause for the default here was Terry's trial counsel's alleged failure to preserve the claims. (Habeas Pet. at 10, 13 (ECF pagination).) Counsel's inadvertence or ignorance is not considered "cause" for a default. *Coleman*, 501 U.S. at 753, 755 ("[C]ounsel's ineffectiveness will constitute cause only if it is an independent constitutional violation."). However, ineffective assistance of counsel can constitute cause to excuse a procedural default "when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel." *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001) (*citing Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)). Here, Terry alleges that his trial counsel was ineffective because of his failure to preserve these accomplice evidence claims. (Habeas Pet. at 10 (ECF

pagination).)  For that reason, the Court evaluates whether Terry's counsel's failure to preserve these claims constitutes ineffective assistance of counsel.

Terry raised an ineffective assistance of counsel claim on appeal.  (App. Div. Br. at 63 (ECF pagination).)  The Appellate Division denied the appeal, but did not explicitly address the ineffective assistance of counsel claim.  Nevertheless, when a state court denies relief, it may be presumed that it has adjudicated the claim on the merits, absent an indication otherwise. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).  By denying reversal of Terry's conviction on appeal, the Appellate Division presumptively denied Terry's ineffective assistance claim.  Terry has not demonstrated that this decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Moreover, even assuming arguendo that the Appellate Court had not reached the merits of Terry's ineffective assistance claim, the claim is meritless.

To secure habeas relief on the basis of ineffective assistance of counsel, petitioner must show (1) that counsel's performance "fell below an objective standard of reasonableness," and (2) that petitioner was prejudiced by the deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984).  When reviewing counsel's performance, the Court must begin with the principle that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Id.* at 690.  The Court must also "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance" and "eliminate the distorting effects of hindsight."  *Id.* at 689.

Moreover, to satisfy the prejudice prong, "it is not enough for the [petitioner] to show that [counsel's] errors had some conceivable effect on the outcome of the proceeding."  *Id.* at 693.  He must instead demonstrate "that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Terry has failed to show prejudice resulting from the allegedly ineffective assistance of counsel. The accomplice evidence, even if admitted in error, does not create a probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different" that is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The jury could have believed Belo-Osagi's identification of Terry irrespective of whether he also properly identified the female accomplice. More to the point, Belo-Osagi's cellular phone, which had been marked with a distinctive sticker, and the amount of cash stolen from Belo-Osagi were both found on Terry after his arrest. Thus, it is highly unlikely that the jury would have not convicted Terry if the accomplice evidence was excluded.

Finally, Terry has not made a showing of a fundamental miscarriage of justice because he has failed to put forward any new evidence suggesting that he is innocent of the underlying crimes. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) ("To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence."); *Gutierrez*, 702 F.3d at 111 (2d Cir. 2012) (finding exception to procedural bar where petitioner demonstrates that he is actually innocent). For the foregoing reasons, Terry's claims relating to the accomplice evidence are denied.

## III. The Trial Court's Charge

Terry next alleges that he was deprived of his right to a fair trial by the trial court declining to charge the jury that the mere probability of guilt did not constitute proof beyond a reasonable doubt, and by not instructing the jury to return separate verdicts as to each defendant. (Habeas Pet. at 13 (ECF pagination).) He has procedurally defaulted on these claims as the

Appellate Division found that Terry's "claims relating to . . . the trial court's instructions on reasonable doubt, and the trial court's instructions regarding the need for separate verdicts as to each defendant are unpreserved for appellate review." (App. Div. Decision & Order at 23 (ECF pagination) (citing N.Y. Crim. Proc. Law § 470.05(2)).) For the reasons set forth in Section II, *supra*, this holding constitutes an adequate and independent state law ground and Terry's jury charge claims are procedurally barred.

As discussed above, a federal court may consider a procedurally defaulted claim where a petitioner demonstrates cause for the default and actual prejudice resulting from the alleged violation of federal law, or that there will be a fundamental miscarriage of justice if the claim is not considered by the federal court. *Coleman*, 501 U.S. at 750. Here, the only cause for the default that Terry alleges is that his trial counsel was ineffective for failing to object to the charge at trial. (Habeas Pet. at 13 (ECF pagination); App. Div. Br. at 58 (ECF pagination).) Because Terry raised this issue on appeal and Terry's conviction was affirmed, the Court may presume that the Appellate Division denied the claim on the merits, even though the Appellate Division did not specifically address it in its opinion. *Harrington*, 562 U.S. at 99. Even if the Appellate Court had not reached the merits of Terry's ineffective assistance claim, the claim is without merit.

The test for ineffective assistance of counsel requires Terry to prove that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390. This second step requires a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 391. As discussed below, the jury instructions were not improper, and as such, failure to object to the instructions cannot be said to

fall below an objective standard of reasonableness. Moreover, it is highly unlikely, and there is clearly not a reasonable probability, that the jury instruction Terry now requests would have led to a different result in the trial court proceedings.

"As a general matter, no particular wording is required for an instruction to be legally sufficient, so long as 'taken as a whole' the instructions correctly convey the required legal principles." *United States v. Roy*, 609 F. App'x 15, 17 (2d. Cir. 2015) (quoting *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (internal quotation marks omitted)). "The trial court 'has discretion to determine what language to use in instructing the jury as long as it adequately states the law.'" *Roy*, 609 F. App'x at 17 (quoting *United States v. Alkins*, 925 F.2d 541, 550 (2d Cir. 1991)). Here, Terry states that the jury charge was constitutionally defective because the trial court "failed to charge that mere probability of guilt did not rise to the level of proof beyond a reasonable doubt, [a]nd gave a multiple defendant charge that did not adequately convey that the jury was to return separate[] verdicts as to each defendant." (Habeas Pet. at 13 (ECF pagination).) For the reasons discussed below, these contentions are without merit.

"A charge on reasonable doubt is constitutionally infirm only when 'there is a reasonable likelihood that the jury understood the instructions to allow conviction' even absent proof of every element of the charged offense beyond a reasonable doubt." *Corines v. Warden, Otisville Fed. Corr. Inst.*, No. 05-CV-2056 (NGG), 2008 WL 4862732, at *13 (E.D.N.Y. June 10, 2008), report and recommendation adopted sub nom. *Corines v. Superintendent, Otisville Corr. Facility*, 621 F. Supp. 2d 26 (E.D.N.Y. 2008) (quoting *Victor*, 511 U.S. at 6); *see also Justice v. Hoke*, 45 F.3d 33, 34 (2d Cir. 1995). "Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof."

*Victor*, 511 U.S. at 5. Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." *Holland v. U.S.*, 348 U.S. 121, 140 (1954).

Applying these principles to Terry's case, it is clear that the trial judge adequately charged the jury on reasonable doubt. The trial court's instruction properly did not equate reasonable doubt with "substantial" or "grave" doubt, and appropriately distinguished between doubt based on the evidence, or lack of evidence, and doubt based upon speculation or guesswork. (May 12, 2008 Trial Tr. (Doc. No. 8-3) at 600–603 ("A doubt of guilt is not reasonable if instead of being based upon the nature and quality of, or lack of evidence, it's based upon some guess, or whim, or speculation unrelated to the case.").) *See Victor*, 511 U.S. at 19–20. Nor did the trial court instruct the jurors that, absent proof beyond a reasonable doubt, they *may* acquit; the instruction explicitly stated that the jurors *must* find Terry not guilty if the prosecution failed to prove each element beyond a reasonable doubt. (May 12, 2008 Trial Tr. at 603:6–8 ("If you find the People have not proven the defendant[s'] guilt beyond a reasonable doubt, you must, of course, find them not guilty.").) *Cf. U.S. v. Birbal*, 62 F.3d 456, 460 (2d Cir. 1995). In short, the trial court properly explained to the jurors that reasonable doubt is a doubt for which there is a reason, and impressed upon them that reasonable doubt may arise from insufficiencies in the evidence. Thus, the trial court's reasonable doubt instruction was in no way contrary to federal law.

Terry's second claim regarding the jury instructions is similarly without merit. He alleges that the charge did not adequately convey that the jury was to return separate verdicts for each defendant. (Habeas Pet. at 13 (ECF pagination).) However, it is abundantly clear from a review of the charge that the trial court adequately conveyed this necessity to the jurors. At the end of the instructions, the trial court told the jury, "you're going to take into the jury room two

verdict sheets.  Remember, there are two separate trials going on; one against Bonner, on[]e against Terry."  (May 12, 2008 Trial Tr.  at 615:15–18.)  The court continued, "with respect to Defendant Terry, you check the applicable boxes, we the jury find the defendant, under the first count, guilty or not guilty."  (*Id.* at 615:21–23)  The court continued this explanation for the remaining counts pertaining to Terry.  (*Id.* at 615:24–25, 616:1–3.)  Having concluded the counts against Terry, the trial court explained, "Defendant Bonner has the same verdict sheet.  Do the same process with respect to Defendant Bonner."  (*Id*. at 616:4–5.)  Thus, the trial court made it exceedingly clear to the jury that they were to return separate verdicts for each defendant and Terry's claim on this ground must fail.

Because the jury instructions were not improper, Terry's counsel's failure to object to the charge does not fall below an objective standard of reasonableness.  In addition, Terry was not prejudiced by the failure to object, or the charge itself, as there is not a reasonable probability that any alleged errors had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).  Thus, Terry has not demonstrated cause or prejudice that would allow this Court to review his procedurally defaulted jury charge claims.

As discussed in Section II, *supra*, Terry fails to make a showing of a fundamental miscarriage of justice by raising new evidence suggesting that he is innocent of the underlying crimes.  *See Schlup*, 513 U.S. at 324.  Thus, Terry's claims relating to the jury charge are denied.

## IV.  Terry's Adjudication as a Persistent Violent Felony Offender

Terry's final ground for habeas review is that his "adjudication as a mandatory persistent felon violated his rights to due process [a]nd a jury trial because it relied on facts not found by a jury."  (Habeas Pet. at 16 (ECF pagination).)  This claim is procedurally defaulted as the

Appellate Division found that "defendant failed to preserve his claim that the statutory procedure underlying his adjudication and sentencing as a persistent violent felony offender was unconstitutional." (App. Div. Decision & Order at 23 (ECF pagination).) For the reasons discussed in Sections II and III, *supra*, this constitutes an adjudication on an adequate and independent state law ground and the claim is therefore procedurally defaulted.

As discussed above, this procedural default can only be overcome if the petitioner is able to demonstrate cause and prejudice for the default, or that there will be a fundamental miscarriage of justice if the Court does not consider the claim. *Coleman*, 501 U.S. at 750. Here, Terry has not alleged any cause for his default on this claim. Terry cannot demonstrate prejudice as N.Y. Crim. Proc. Law § 70.08, the persistent violent felony offender statute that he challenges, has routinely been upheld as constitutional. *See e.g.*, *Kelly v. Griffin*, No. 12-CV-3384 (BMC), 2012 WL 6569769, at *6 (E.D.N.Y. Dec. 14, 2012); *Adelman v. Ercole*, No. 08-CV-3609 (RJD), 2010 WL 3210718, at *5 (E.D.N.Y. Aug. 12, 2010); *Francischelli v. Potter*, No. 03-CV-6091 (ENV), 2007 WL 776760, at *9 (E.D.N.Y. Mar. 12, 2007) ("Accordingly, district courts in this circuit have routinely rejected similar challenges to § 70.08 based on *Apprendi* and *Ring*."); *cf. Portalatin v. Graham*, 624 F.3d 69, 93–94 (2d Cir. 2010) (en banc) (holding that N.Y. Crim. Proc. Law § 70.10, New York's persistent felony offender statute, is constitutional). Nor, as discussed in Sections II and III, *supra*, has Terry made a showing of a fundamental miscarriage of justice. *See Schlup*, 513 U.S. at 324. Thus, Terry's claims relating to his adjudication as a persistent violent felony offender are denied.

## CONCLUSION

For the foregoing reasons, Terry's petition for a writ of habeas corpus is DENIED. (Doc. No. 1.) As Terry has not made a substantial showing of the denial of a constitutional right, the

Court declines to issue a certificate of appealability.  *See* 28 U.S.C. § 2253; *Soto v. United States*, 185 F.3d 48, 51 (2d Cir. 1999).  Moreover, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to enter judgment accordingly, to mail a copy of this Order and the accompanying Judgement to plaintiff *pro se*, and to close the case.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
        July 25, 2016

_____
ROSLYNN R. MAUSKOPF
United States District Judge